IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COUNTRY MUTUAL INSURANCE CO. a/s/o | : | CIVIL ACTION |
| NEWTOWN WALK COMMUNITY | : | |
| | : | |
| v. | : | |
| | : | |
| TOLL BROS., INC. | : | |
| | : | |
| v. | : | |
| | : | |
| SUMMIT ELECTRIC CONSTRUCTION, INC. | : | NO. 21-2005 |

| | | |
|---|---|---|
| AMERICAN SELECT INSURANCE | : | CIVIL ACTION |
| COMPANY | : | |
| v. | : | |
| | : | |
| TOLL BROS., INC. & SUMMIT ELECTRIC | : | |
| CONSTRUCTION INC. | : | NO. 21-3659 |

## MEMORANDUM

**Padova, J.**                                                                                    **July 1, 2022**

    Plaintiffs Country Mutual Insurance Co. ("Country Mutual") and American Select

Insurance Co. ("American Select") filed subrogation claims in two separate but related cases,

seeking to recoup amounts paid to their insureds in connection with a July 9, 2019, fire in a

residential property in the Newtown Walk Community.  Both Complaints named contractor Toll

Bros., Inc. ("Toll Bros.") as a Defendant, and American Select's Complaint named subcontractor

Summit Electric Construction Co. ("Summit Electric") as a Joint Defendant.  Seeking contractual

indemnification, Toll Bros. thereafter filed a Third-Party Complaint against Summit Electric in

Civil Action No. 21-2005 (the "Country Mutual Case") and a crossclaim against Summit Electric

in Civil Action No. 21-3659 (the "American Select Case").  At the parties' request, we

consolidated the two cases for resolution.  Toll Bros. then filed two Motions for Judgment on the

Pleadings in each case, one of which seeks dismissal of the Plaintiff's Complaint, and the other of which seeks judgment on its contractual indemnification claim against Summit Electric.[1] Thus, in total, Toll Bros. filed four Motions in the two cases. We heard argument on the Motions on January 18, 2022. On January 19, 2022, we converted the two Motions for Judgment on the Pleadings that seek dismissal of Plaintiffs' Complaints into Motions for Summary Judgment pursuant to Federal Rule of Civil Procedure 12(d), permitted a period of limited discovery, and gave the parties the opportunity to file supplemental briefs at the conclusion of discovery. For the reasons that follow, we now grant the converted Summary Judgment Motions in full. At the same time, we dismiss as moot in part, grant in part, and defer in part the Motions for Judgment on the Pleadings that seek judgment on Toll Bros.' contractual indemnification claims against Summit Electric.

I.      **SUMMARY JUDGMENT MOTIONS**

        **A. Background**

        The undisputed facts in this case are that, on or about July 9, 2019, a fire occurred at 202 Jenks Alley in the Newtown Walk Community in Newtown, PA ("the premises"). The Newtown Walk Community had a property insurance policy with Plaintiff Country Mutual, and, pursuant to that policy, County Mutual paid the Community in excess of $600,000 for the fire damage to the premises. Meanwhile, Robert and Lisa Kaplan, the unit owners of the premises (the "Unit Owners"), had a property insurance policy with Plaintiff American Select, and, pursuant to that policy, American Select paid the Kaplans over $400,000 for the fire damage to their property.

        Toll PA XIII, L.P. is the developer of the Newtown Walk Community, a common interest community subject to the Pennsylvania Uniform Planned Community Act, 68 Pa. Cons. Stat. §

---

[1] As a joint Defendant, Summit Electric joined in Toll Bros.' Motion for Judgment on the Pleadings seeking dismissal of Plaintiff's Complaint in the American Select Case.

3101 et seq.   (See Decl. of Covenants, Conditions, and Restrictions, Docket No. 42-2 in the Country Mutual Case, and Docket No. 39-2 in the American Select Case, at 1, § 6.01.)   The Newtown Walk Community's Declaration of Covenants, Conditions, and Restrictions ("Declaration of Covenants") includes a Subrogation Waiver.  The Subrogation Waiver reads in pertinent part:

> Subject to the provisions of this Article, each Unit Owner and the Board hereby waives and releases any and all claims which he or it may have against any other Owner, the Association, the Board and members thereof, the Declarant and its respective employees and agents, for damage to the Common Facilities, the Units or to any personal property located in the Units or Common Facilities, caused by fire or other casualty or any act or omission of any such party, to the extent that such damage is covered by property or casualty insurance.

(Id. § 11.06.)   The Declaration of Covenants defines "Declarant" to be Toll PA XIII, L.P., and defines  "Association" to mean the "Newtown Walk Community Association, Inc., a Pennsylvania nonprofit corporation."   (Id. at 1-2.)    Its definition of "Board" is "the Board of Directors of Newtown Walk Community Association, Inc.," and adds that "any reference herein or in the Articles of Incorporation, Bylaws or Rules and Regulation to any power, duty, right of approval or any other right of the Association shall be deemed to refer to the Board."  (Id.)

Pursuant to an oral agreement with Toll PA XIII, L.P., Toll Bros., a contractor, agreed to "perform[] the design and construction activities relating to [the premises]."  (Smith Aff., Docket No. 42-4 in the Country Mutual Case, and Docket No. 39-4 in the American Select Case, ¶ 6; see also Resp. to Req. for Prod. of Docs., Docket No. 42-1 in the Country Mutual Case, and Docket No. 39-1 in the American Select Case, at 5 ¶ D.1.)  Toll Bros., in turn, hired Summit Electric, a subcontractor, to install the premises' electric service.  (See Toll Bros. & Summit Electric Constr. Agreement, Ex. 3, Docket No. 10-1 in the Country Mutual Case and Docket No. 7-4 in the American Select Case.)

Country Mutual instituted one of the two instant consolidated actions against Toll Bros., alleging that the negligence of Toll Bros. and/ or its agents caused the fire.  (See Compl. in the Country Mutual Case.)  Its Complaint against Toll Bros. contains two counts: Count I asserts a claim for negligence and Count II asserts a claim for breach of implied warranties.  American Select filed the second of the two consolidated actions against Toll Bros. and Summit Electric. (See Compl. in the American Select Case.)  American Select's Complaint asserts a single count for negligence against both Toll Bros. and Summit Electric.

Toll Bros. filed the instant Motions for Summary Judgment, asserting that judgment should be entered in its favor on the negligence and breach of warranty claims in both civil actions because Country Mutual and American Select, as subrogees of the Association and the Unit Owner,  are bound by the Subrogation Waiver in the Declaration of Covenants.  Summit Electric joined and adopted the Motion that Toll Bros. filed in the American Select Case.[2]  Country Mutual and American Select oppose both Motions.

**B.   Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id. (citation omitted).

---

[2] As a co-defendant in the American Select Case, Summit Electric joined and adopted Toll Bros.' Motion for Judgment on the Pleadings seeking dismissal of American Select's Complaint, which was later converted to a Motion for Summary Judgment.  (Stipulation, Docket No. 22 in the American Select Case.)  Accordingly, to the extent that we grant Toll Bros.' Motion for Summary Judgment in that civil action, we will grant relief to Summit Electric as well.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  After the moving party has met its initial burden, the adverse party's response "must support the assertion [that a fact is genuinely disputed] by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials [that the moving party has] cited do not establish the absence . . . of a genuine dispute."  Fed. R. Civ. P. 56(c)(1).  Summary judgment is appropriate if the nonmoving party fails to respond with a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  In ruling on a summary judgment motion, we consider "the facts and draw all reasonable inferences in the light most favorable to . . . the party who oppose[s] summary judgment."  Lamont v. New Jersey, 637 F.3d 177, 179 n.1 (3d Cir. 2011) (citing Scott v. Harris, 550 U.S. 372, 378 (2007)).

### C.  Discussion

In its Motions for Summary Judgment, Toll Bros. argues that we should enter judgment in its favor based on the Subrogation Waiver in the Declaration of Covenants.  Specifically, Toll Bros. argues that Plaintiffs, as subrogees of the Unit Owners and the Association, are bound by this waiver.  In response, Country Mutual argues that it is not bound by the waiver because it is the subrogee of the Association, and only the Board waived its rights in the Subrogation Waiver. In addition, both Country Mutual and American Select argue that there is a genuine dispute of material fact as to whether Toll Bros. and Summit Electric were agents of Toll PA XIII, L.P. such that they are protected by the Subrogation Waiver.

The Motions present a disagreement over contract interpretation.  As a general matter, "we determine the meaning of a contract based on the language used."  Williams v. Medley Opportunity Fund II, LP, 965 F.3d 229, 239 (3d Cir. 2020) (citation omitted).  "The fundamental rule in contract interpretation is to ascertain the intent of the contracting parties."  Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co., 905 A.2d 462, 468 (Pa. 2006) (citing Robert F. Felte, Inc. v. White, 302 A.2d 347, 351 (Pa. 1973)).  "In cases of a written contract, the intent of the parties is the writing itself." Id. (citing Pines Plaza Bowling, Inc. v. Rossview, Inc., 145 A.2d 672 (Pa. 1958)).  Thus, "[w]hen the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself" without "resort to extrinsic aids or evidence."  Id. (citing Hutchison v. Sunbeam Coal Corp., 519 A.2d 385, 390 (Pa. 1986); Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 92 (3d Cir. 2001) (quotation omitted). "A contract is [only] ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense."  Ins. Adjustment Bureau,  905 A.2d at 468-69 (citing Kripp v. Kripp, 849 A.2d 1159, 1163 (Pa. 2004)).  While the meaning of an ambiguous contract is a question of fact for the jury, the meaning of an unambiguous contract is question of law for the trial judge.  Id. (citing Kripp, 849 A.2d at 1163).

### 1.  Does the Subrogation Waiver Apply to the Association?

As noted above, the Subrogation Waiver provides that the Board waives all claims against Toll Bros. and its agents for fire damage that is covered by insurance.  Toll Bros. maintains that this waiver bars Country Mutual's claims, but Country Mutual argues that it is not bound by the waiver because it is a subrogee of the Association, not the Board.

 "'Subrogation' is the substitution of another person in place of the creditor to whose rights he or she succeeds in relation to the debt, and gives to the substitute all the rights, priorities,

remedies, liens, and securities of the person for whom he or she is substituted."  16 Steven Plitt et al., COUCH ON INSURANCE § 222:5 (3d ed. 2020) ("Definition and nature of subrogation").  "It is well-established that subrogation is derivative in nature, placing the subrogee in the precise position of the one to whose rights and disabilities he is subrogated."  Church Mut. Ins. Co. v. Palmer Constr. Co., 153 F. App'x 805, 808 (3d Cir. 2005) (quotation and citations omitted).  For this reason, subrogation waivers are enforceable against purported subrogees in Pennsylvania. Universal Underwriters Ins. Co. v. A. Richard Kacin, Inc., 916 A.2d 686, 692 (Pa. Super. Ct. 2007).

In light of this caselaw, there is no question that a subrogee of the Board is bound by the Subrogation Waiver.  The Declaration of Covenants defines "Board" to mean "the Board of Directors of Newtown Walk Community Association" and adds that "any reference herein . . . to any power, duty, right of approval or any other right of the Association shall be deemed to refer to the Board."  (Decl. of Covenants at 2.)  Country Mutual recognizes this definition, but maintains that the definition "doesn't go the other way," that is, while a reference to the powers and duties of the Association may also pertain to the Board, "a reference to the board is not deemed [a reference to] . . . the association."  (N.T. 1/18/22 at 22.)  In Country Mutual's view, all of its "rights are derived directly from the "[A]ssociation," not the Board, and the Declaration of Covenants does not say that the Association waived its subrogation rights.  (Id. at 23.)  Thus, it argues that it is free to bring its negligence and breach of warranty claims against Toll PA XIII, L.P. and its agents, and is not subject to the Subrogation Waiver.

However, we have no trouble concluding that the Subrogation Waiver unambiguously binds not only the Board, but also the Association.  The Board is defined as "the Board of Directors of Newtown Walk Community Association, Inc." (Decl. of Covenants at 2), and the Declaration

of Covenants explicitly states that "[u]nless otherwise specifically provided, all rights, powers, authority, duties and responsibilities of the Association shall be exercised . . . by the Board of Directors."  (Id. § 3.04).  It follows that, unless a specific exception is made, Association action requires the action of the Board and when the Board acts, it does so on behalf of the Association. Indeed, the Board is specifically charged with responsibility for exercising the Association's rights, powers, and authority.  (See id. § 3.04; see also id. at 2 (stating that "any power, duty, right of approval or any other right of the Association shall be deemed to refer to the Board").  Thus, when the Board waived the right to subrogate, it was acting on behalf of the Association and necessarily limited the Association's "right, power, [and] authority" to bring claims for damages against Toll PA XIII, L.P. and its agents.  Notably, the Board's power to bind the Association in this regard is consistent with the Pennsylvania Uniform Planned Community Act,  which regulates the Association (Decl. of Covenants at 1, 22), and provides that "[e]xcept as provided in the declaration [or] in the bylaws . . . the [association] board may act in all instances on behalf of the association," 68 Pa. Cons. Stat. § 5303.  We conclude, accordingly, that the Subrogation Waiver's reference to the Board unambiguously limits the right of the Association to bring a subrogation claim and, in turn, bars County Mutual from bringing any claim for the fire damage at issue here against Toll PA XIII, L.P. and its agents.[3]

---

[3] Interpreting the Subrogation Waiver to apply only to the Board and not the Association, as Country Insurance contends, would grant the Association a right that does not belong to the Board.  This result would conflict with the plain text of the Declaration of Covenants, which states that "any reference . . . to any . . . right of the Association shall be deemed to refer to the Board." (Decl. of Covenants at 2.)  Indeed, given that provision, it seems plain that the Association could not have *more* subrogation rights than the Board.

2.  <u>Are Toll Bros. and Summit Electric Agents of Toll PA XIII, L.P.?</u>

Both Country Mutual and American Select argue that we should nevertheless deny summary judgment to Toll Bros. and Summit Electric on the basis of the Subrogation Waiver because there is a genuine factual dispute as to whether Toll Bros. and Summit Electric were agents of Toll PA XIII, L.P, such that the Subrogation Waiver applies to claims against them.  As noted, above, the Subrogation Waiver applies to "claims" by each "Unit Owner and the Board" that could otherwise be brought against "[Toll PA XIII, L.P.] and its respective employees and agents." (Decl. of Covenants § 11.06.)   Toll Bros. maintains that it is the express agent of Toll PA XIII, L.P. and, in support of that assertion, it offers the affidavit of its Vice President and Counsel, David Smith.  In the affidavit, Smith avers that "Toll Bros., Inc. performed the design and construction activities relating to [the premises] pursuant to an agreement with Toll PA XIII, L.P." (Smith Aff. ¶ 6.)  Plaintiffs have not submitted any additional evidence for us to consider.

In Pennsylvania, "[a]n agency relationship may be created by any of the following: (1) express authority, (2) implied authority, (3) apparent authority, and/or (4) authority by estoppel." <u>Walton v. Johnson</u>, 66 A.3d 782, 786 (Pa. Super. Ct. 2013).  While "[t]he creation of an agency relationship requires no special formalities," "[t]he party asserting the existence of an agency relationship bears the burden of proving it by a fair preponderance of the evidence."  <u>Id.</u> at 787 (quotation omitted).

Here, Toll Bros. argues that, by virtue of its contractual relationship with Toll PA XIII, L.P. to develop the premises, it was the express agent of Toll PA XIII, L.P.  "Express authority exists where the principal deliberately and specifically grants authority to the agent as to certain matters."  <u>Id.</u> at 786 (citation omitted).  Indeed, "[express] authority . . . is created by a principal's manifestation to an agent that, as reasonably understood by the agent, expresses the principal's

9

assent that the agent take action on the principal's behalf."  Restatement (Third) of Agency § 3.01 (Am. L. Inst. 2006).  "[W]here the facts giving rise to the relationship are not in dispute, the question is one which is properly decided by the court."  Refuse Mgmt. Sys., Inc. v. Consol. Recycling & Transfer Sys., Inc., 671 A.2d 1140, 1147 (Pa. Super. Ct. 1996) (citation omitted).

Here, as noted above, the Smith Affidavit specifically states that Toll Bros. "performed the design and construction activities relating to [the premises] pursuant to an agreement with Toll PA XIII, L.P."  (Smith Aff. ¶ 6.)[4]  It therefore follows that Toll PA XIII, L.P., at least "as reasonably understood by [Toll Bros.]," "assent[ed] that [Toll Bros.] take action" on its behalf.  Restatement (Third) Of Agency § 3.01.  By assenting to perform work on behalf of Toll PA XIII, L.P., Toll Bros. entered into an agency relationship with Toll PA, XIII, L.P.  See id. § 1.01 (defining agency).  Based on this evidence, and in the absence of any evidence to the contrary, we conclude that Toll Bros. has met its burden of establishing that there is no genuine factual dispute that Toll Bros. was the agent of Toll PA XIII, L.P.

Toll Bros. also argues that, based on Summit Electric's subcontractor status, Summit Electric was an agent of Toll PA XIII, L.P., protected by the Subrogation Waiver.  "A subagent is a person appointed by an agent to perform functions that the agent has consented to perform on behalf of the agent's principal and for whose conduct the appointing agent is responsible to the principal."  Restatement (Third) of Agency § 3.15.  "The relationships between a subagent and the appointing agent and between the subagent and the appointing agent's principal are relationships of agency."  Id.  Here, the evidence is that Summit Electric contracted with Toll Bros. to install

---

[4] Plaintiffs both admit in their Complaints that Toll Bros. "undertook to perform the development and/ or construction of the [premises], which included, but was not limited to, the design and installation of electrical service and its related components."  (Compl. in the Country Mutual Case ¶ 11; Compl. in the American Select Case ¶ 11.)

the electric service in the premises.   (See Toll Bros. & Summit Electric Constr. Agreement.)

Therefore, Summit Electric was "appointed by [Toll Bros.] to perform functions that [Toll Bros.]

. . . consented to perform on behalf of [Toll PA XIII, L.P.]."   Restatement (Third) of Agency §

3.15.   Plaintiffs have submitted no evidence that would support a contrary conclusion so as to

create a genuine dispute of material fact.   Accordingly, we conclude that Toll Bros. has met its

burden of establishing that the undisputed facts of record support the conclusion that Summit

Electric was its agent while working on the premises.   Summit Electric, like Toll Bros., was thus

an agent of Toll PA XIII, L.P., and is entitled to the protection of the Subrogation Waiver.   We

therefore grant Toll Bros.' Summary Judgment Motions in full based on the Subrogation Waiver.

## II.        MOTIONS FOR JUDGMENT ON THE PLEADINGS

Toll Bros. moves for judgment on the pleadings, asking us to issue judgment in its favor

on its Third-Party Complaint in the Country Mutual Case and Crossclaim in the American Select

Case, both of which seek orders requiring Summit to indemnify and defend Toll Bros. in

connection with Plaintiffs' claims against it.   For the reasons that follow, we dismiss the Motions

as moot in part, grant them in part, and defer them in part.

### A.  Background

In its Third-Party Complaint and Crossclaim, Toll Bros. incorporates by reference the

allegations of Plaintiffs' Complaints.   (Toll Bros.' Third-Party Compl., Docket No. 10 in the

Country Mutual Case, ¶ 22; Toll Bros.' Crossclaim, Docket No. 7 in the American Select Case, ¶

1.)   Those Complaints allege that, on or about July 9, 2019, a fire occurred at the premises.   (Compl.

in the Country Mutual Case, ¶ 12; Compl. in the American Select Case, ¶ 13.)   They further allege

that either Toll Bros.' or Summit Electric's negligence in installing the electrical service at the

premises caused the fire.  (Compl. in the Country Mutual Case, ¶¶ 12-13; Compl. in the American Select Case, ¶¶ 13-14.)

Toll Bros. alleges in its Third-Party Complaint and Crossclaim that it performed "general contracting services" for the premises subject to an agreement with the premises' developer, Toll PA, XIII L.P.  (Toll Bros.' Third-Party Compl., ¶ 7; Toll Bros.' Crossclaim, ¶ 2.)  In turn, Toll Bros. hired Summit Electric, a subcontractor, to install the premises' electric service.  (Toll Bros.' & Summit Electric Constr. Agreement.)[5]   The Construction Agreement contains an indemnification clause (the "Indemnification Clause"), which states in pertinent part:

> The Contractor shall indemnify, defend and hold harmless Toll and all of its agents and employees from and against all claims, damages, losses and expenses including attorneys' fees in any way arising out of or resulting from the performance, existence or condition of the Work under the Contract Documents, whether or not such claim, damage, loss or expense is based in whole or in part upon any negligent act or omission of Toll or Toll's participation in the Work or upon any statutory duty or obligation.  Contractor expressly acknowledges that the parties are contractually allocating these risks to Contractor . . . .

(Id. art. 3.)  After Plaintiffs commenced the instant actions, Toll Bros. tendered its defense to Summit Electric and Summit Electric's insurer pursuant to the Indemnification Clause, but Summit Electric and its insurer declined.  (Toll Bros.' Third Party Compl. ¶¶ 15-20; Toll Bros.' Crossclaim ¶¶ 10-15.)

Toll Bros. now moves for judgment on the pleadings on its a third-party claim for contractual indemnification in the Country Mutual Case and on its crossclaim for contractual indemnification in the American Select Case.  Specifically, Toll Bros. seeks an order that Summit

---

[5] On a Motion for Judgment on the Pleadings, we may consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  Wolfington v. Reconstructive Orthopaedic Assocs. II PC, 935 F.3d 187, 195 (3d Cir. 2019) (quotation omitted).  Toll Bros. attached the Toll Bros. & Summit Electric Construction Agreement to its pleadings; therefore, we may consider this exhibit in deciding the Motions.

Electric has a duty to indemnify and defend it in the instant cases, including an order requiring Summit Electric to pay the attorneys' fees and costs that it has incurred in defending itself in this litigation.

### B.  Legal Standard

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "A motion for judgment on the pleadings will be granted . . . if, on the basis of the pleadings, the movant is entitled to judgment as a matter of law."  Fed Cetera, LLC v. Nat'l Credit Servs., Inc., 938 F.3d 466, 469 n.7 (3d Cir. 2019) (alteration in original) (quoting DiCarlo v. St. Mary Hosp., 530 F.3d 255, 262 (3d Cir. 2008)) (citing Fed. R. Civ. P. 12(c)).

"A motion for judgment on the pleadings under Rule 12(c) 'is analyzed under the same standards that apply to a Rule 12(b)(6) motion.'"  Wolfington v. Reconstructive Orthopaedic Assocs. II PC, 935 F.3d 187, 195 (3d Cir. 2019) (quoting Revell v. Port Auth. of N.Y. & N.J., 598 F.3d 128, 134 (3d Cir. 2010)); see also Jenkins v. SEPTA, 801 F. App'x 71, 72 (3d Cir. 2020) ("The standards governing Rule 12(c) motions are the same ones that govern motions to dismiss under Rule 12(b)(6)." (citing Spruill v. Gillis, 372 F.3d 218, 223 n.2 (3d Cir. 2004))).  Therefore, we "must 'view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party,'" and we may only grant a motion for judgment on the pleadings if "'the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'"  Wolfington, 935 F.3d at 195 (quoting In re Asbestos Prods. Liab. Litig. (No. VI), 822 F.3d 125, 133 n.6 (3d Cir. 2016)).  Legal conclusions, however, receive no deference, as we are "not bound to accept as true a legal

conclusion couched as a factual allegation." Wood v. Moss, 572 U.S. 744, 755 n.5 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

### C. Discussion

Toll Bros. argues that Summit Electric has a duty to indemnify and defend it based on language found in Toll Bros.' and Summit Electric's Construction Agreement.

As an initial matter, we cannot rule on claims for indemnification unless the party seeking indemnification has made payment on an underlying claim. Kelly v. Thackray Crane Rental, Inc., 874 A.2d 649, 661 (Pa. Super. Ct. 2005) (citing McClure v. Deerland Corp., 585 A.2d 19, 22 (Pa. Super. Ct. 1991)); McClure, 585 A.2d at 22 ("[A]ppellants' claims for indemnification are premature until they make payment of an underlying claim by settlement or judgment, because counsel fees and expenses cannot be determined to be either necessary or reasonable until the right to indemnification arises by payment of a judgment or settlement."). Here, by granting summary judgment in Toll Bros.' favor on Plaintiffs' claims against it, we have ensured that Toll Bros. will not be required to make any payment on an underlying claim. As a result, there is no longer a pending claim for which Toll Bros. may seek indemnification, and we dismiss the Motions for Judgment on the Pleadings as moot insofar as they seek judgment that Summit Electric has a duty to indemnify Toll Bros.

However, Toll Bros. also seeks judgment that Summit Electric has a duty to defend it in the instant cases. "[U]nder Pennsylvania law, a duty to defend is separate and distinct from [a] duty to indemnify. . . . [W]hile the duty to indemnify arises only when payment pursuant to an underlying settlement or judgment has been made, the duty to defend arises immediately whenever the allegations in the complaint in an underlying litigation potentially fall within the scope of the contract's coverage." Invensys Inc. v. Am. Mfg. Corp., Civ. A. No. 04-3744, 2005

WL 600297, at *4 (E.D. Pa. Mar. 15, 2005) (second alteration in original) (quotation omitted) (citing <u>Frog, Switch & Mfg. Co. v. Travelers Ins. Co.</u>, 193 F.3d 742, 746 (3d Cir.1999)).  "As indemnity clauses are construed against the party seeking indemnification, a duty to defend will only be found where the parties used clear, unambiguous language."  <u>Id.</u> (citation omitted).

As noted above, the Indemnification Clause in the Toll Bros. & Summit Electric Construction Agreement unambiguously reads: "[t]he Contractor [Summit Electric] shall . . . defend and hold harmless Toll and all of its agents and employees from and against all claims, damages, losses and expenses including attorneys' fees in any way arising out of or resulting from the performance, existence or condition of the Work under the Contract Documents."  (Toll Bros. & Summit Electric Constr. Agreement, art. 3.)  Thus, in determining whether Summit Electric had a duty to defend, we need only determine whether the allegations in the Complaints filed by Country Mutual and American Select "potentially fall within the scope of the contract's coverage" by asserting claims that that "aris[e] out of or result[] from the performance, existence or condition of [Summit Electric's] Work under the Contract Documents."   <u>Invensys Inc.</u>, 2005 WL 600297, at *4; (Construction Agreement, art. 3).  In fact, those Complaints allege that Toll Bros.' and/or agent Summit Electric's electric construction work on the premises was faulty and that, consequently, either Toll Bros. or Summit Electric caused the July 9, 2019 fire.  (Compl. in the American Select Case, ¶¶ 13-14; Compl. in the Country Mutual Case, ¶¶ 12-13.)  It is therefore evident that the allegations of the two Complaints potentially fall within the scope of Summit Electric's contractual duty to defend.  Accordingly, we conclude that Summit Electric had a duty to defend Toll Bros. in the instant cases, and we grant Toll Bros.' Motions for Judgment on the Pleadings on this issue.

Having refused to defend Toll Bros. prior to this time, Summit Electric is now liable for the reasonable attorneys' fees and costs that Toll Bros. has incurred in defending itself from Plaintiffs' claims in this litigation.  See Ramara, Inc. v. Westfield Ins. Co., 69 F. Supp. 3d 490, 502 (E.D. Pa. 2014) (concluding, in the insurance context, that "[w]hen an insurer erroneously denies its duty to defend, it must pay defense costs already incurred" (citing Kiewit E. Co. v. L & R Constr. Co., 44 F.3d 1194, 1205 (3d Cir. 1995))).  While Toll Bros. asks us to order Summit Electric to pay all attorneys' fees and costs, it has not yet quantified those expenses, making it impossible for us to enter a final order.  Accordingly, while we hold that Summit Electric is liable for breaching the duty to defend and thus must pay Toll Bros.' reasonable attorneys' fees and costs, we defer ruling on Toll Bros.' Motion to the extent that it seeks a final order requiring payment of attorneys' fees and costs, and we instead give Toll Bros. an opportunity to submit an application for attorneys' fees and costs within thirty days of our Order.

## III.    CONCLUSION

For the above-stated reasons, we grant Toll Bros.' Motions for Summary Judgment in full. As a result, we enter judgment in Toll Bros.' favor on American Select's negligence claims against it in the American Select Case and on Country Mutual's claims against it for both negligence and breach of warranty in the Country Mutual Case.  Furthermore, in light of Summit Electric's joinder in Toll Bros.' Motion in the American Select Case, we also enter judgment in Summit Electric's favor on American Select's negligence claim against it in that case.

In addition, for the above-stated reasons, we dismiss the Motions for Judgment on the Pleadings as moot insofar as they seek judgment that Summit Electric must indemnify Toll Bros. in the instant cases.  At the same time, we grant the Motions for Judgment on the Pleadings insofar as they seek judgment that Summit Electric has a duty to defend Toll Bros. in the instant cases,

16

and we therefore enter judgment on this issue in favor of Toll Bros. and against Summit Electric as to liability only.  To the extent that the Motions seek an order that Summit Electric reimburse Toll Bros. for the attorneys' fees and costs incurred, we defer the Motions pending additional submissions from the parties as to the amount of the recoverable attorneys' fees and costs.

      An appropriate Order follows.

BY THE COURT:

s/ John R. Padova

_____

John R. Padova, J.